UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| K.W.B.,<br><br>  Petitioner,<br><br>vs.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>  Respondent. | Case No.: CV 09-223-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is K.W.B.'s Petition for Review (Docket No. 3), seeking review of the Social Security Administration's final decision to deny his claim for disability insurance benefits. This action is brought pursuant to section 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

Petitioner's mother applied for Supplemental Security Income benefits on behalf of Petitioner, a minor, on February 28, 2006; he was denied initially on May 3, 2006 and, again, on reconsideration on August 29, 2006. *See* Pet.'s Brief, p. 2 (Docket No. 11). On November 15, 2006, Petitioner made a request (good cause was established for the late filing) for a hearing before an Administrative Law Judge ("ALJ"). *See id*. On June 10, 2008, the ALJ held a hearing

**MEMORANDUM DECISION AND ORDER - 1**

in Boise, Idaho, at which time Petitioner, represented by attorney Joanne Kibodeaux, appeared and testified. (AR 23). A medical expert, James R. Bruce, Ph.D., also appeared and testified during the same June 10, 2008 hearing.

On November 7, 2008, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 23-35). Petitioner requested review from the Appeals Council on January 9, 2009. (AR 10). On March 10, 2009, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 6).

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that the ALJ's and Appeals Council's decisions are not supported by substantial competent evidence and/or contain legal errors. *See* Pet.'s Brief, p. 7 (Docket No. 11); *see also* Pet. for Review, p. 1 (Docket No. 3). Specifically, Petitioner asserts that (1) medical records, submitted after the hearing but before the ALJ's November 7, 2008 decision, were ignored by both the ALJ and the Appeals Council; (2) the ALJ failed to properly evaluate Petitioner's credibility; and (3) the administrative record was not properly developed. *See* Pet.'s Brief, pp. 7-14 (Docket No. 11). Petitioner requests that the Court reverse the ALJ's decision and order the payment of benefits or, alternatively, remand the case for proper consideration of the evidence. *See id*. at p. 14; *see also* Pet. for Review, p. 2 (Docket No. 3).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a three-step sequential process in determining whether an individual under the age of 18 is disabled (*see* 20 C.F.R. § 416.924(a)) within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 416.920(b), 416.924(a) & (b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity at any time relevant to this decision." (AR 26).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe. 20 C.F.R. § 416.924(a).

For an individual who has not attained the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 416.924(a) & (c). Here, the ALJ found that Petitioner had the following severe impairments: neurofibromatosis type I; organic mental disorder; posttraumatic stress disorder; and history of attention deficit disorder. (AR 26). The ALJ went on to state that these impairments "cause significant limitations in the claimant's ability to perform basic work activities." *See id*.

In the third and final step, the ALJ must determine the medical severity of any impairments; that is, whether the claimant's impairments meet or medically equal the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings. 20 C.F.R. § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled; if not, the claimant is not disabled. 20 C.F.R. §§ 416.924(d)(1) & (2). Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet, medically equal, or functionally equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 26-34).

**B.    Analysis**

The thrust of Petitioner's argument relates to the apparent absence of any substantive discussion of certain medical records submitted to the ALJ after the June 10, 2008 hearing. With

**MEMORANDUM DECISION AND ORDER - 5**

this overarching backdrop, Petitioner claims that (1) the ALJ's decision and, likewise, the Appeals Council's consideration of the same are not based upon substantial evidence; (2) the ALJ's credibility analysis is not properly supported; and (3) the administrative record was not fully developed. *See* Pet.'s Brief, pp. 7-14 (Docket No. 11). An examination of the at-issue medical records is therefore integral to resolving the parties' instant dispute.

During the June 10, 2008 hearing, the ALJ and Petitioner's counsel discussed the exhibits speaking to Petitioner's alleged disability, including certain exhibits that were not available at that time:

> ALJ: We're back on the record. Ma'am, you have had an opportunity to discuss moving the onset date up to the current application date with your attorney. Do you have any objections to that? Okay. Well, we'll move her onset date to February 28, 2006. Counsel, you've had an opportunity to review our proposed exhibit list. We have the – we have Exhibits 1 through 24F in connection with the prior hearing. We have B1-D. I guess they're A and B exhibits. They're not numbered. B-1E through B-10E and B-1F through B-19F and that does include the new documentation you brought in today. Objections?
>
> ATTY: No.
>
> ALJ: There being no objections, the exhibit list will be admitted into the record.
>
> ALJ: Do you – okay. I guess we have had that discussion. I am going to give you 20 days, Counsel. Within that 20 days, you can supplement the file with anything you feel is relevant. You can also do any briefing you feel is necessary. If I haven't heard back from you within that 20 days either with the receipt of some documentation or a telephone call to the billings office requesting additional time, I'll make a decision without that. The discussion we have had before the hearing, apparently the treating source did call you up on the phone the other day and he wants to have some input and just apparently hasn't got it down on a piece of paper yet. If we get that and it looks like that may make a difference, you on your own motion or me on mine can do interrogatories to our expert or we can also entertain a

>motion for a supplemental hearing at that point if you think that's going to make a difference.

ATTY: All right.

(AR 646-647). Petitioner's counsel claims she obtained "several extensions of time" to submit post-hearing records (*see* Pet.'s Brief, p. 8 (Docket No. 11))[1] and, ultimately, delivered supplemental materials to the ALJ via facsimile on August 11, 2008. (AR 595-605). Those materials contained records from (1) J.T. Leavell, M.D., dated July 17, 2008 and (2) the Genetic Counseling Clinic, dated June 11, 2008, signed by Robert S. Wildin, M.D. *See id.*[2]

Within the materials sent to the ALJ on August 11, 2008, Drs. Leavell and Wildin made the following observations with respect to Petitioner:

| **Dr. Leavell** | **Dr. Wildin** |
|---|---|
| "[Petitioner] is a patient I have followed since November, 2002." (AR 597). | "14-year-old young man with dominantly inherited neurofibromatosis type I with a supraorbital plexiform neuroma which is being followed by MRI." (AR 601). |
| "[Petitioner] has several diagnoses including Type I Neurofibromatosis, Attention Deficit Hyperactivity Disorder (ADHD), Dyscalculia (math disorder), Dysgraphia, Anxiety disorder, and nonspecific mood disorder." [Petitioner] has also been diagnosed with Post Traumatic Stress Disorder." (AR 597). | "There are multiple NF1 related hamartomas visible on cranial and cervical MRIs." (AR 602). |

---

[1] Petitioner's references to the record that supposedly substantiate these extensions are somewhat lacking in that they don't clearly speak to actual extensions sought/received. *See* Pet.'s Brief, p. 8 (Docket No. 11) (citing (AR 12, 596)). Still, other than generally stating that these materials were "untimely" (*see* Resp't Brief, pp. 4-5 (Docket No. 12)), Respondent raises no focused objection to Petitioner's claims in this specific respect. *See also infra* at pp. 10-11.

[2] Petitioner's counsel explains that a miscommunication between her, the medical providers, and Petitioner's mother contributed to the delay in forwarding these records to the ALJ. (AR 596) ("In speaking with my client's mother last week, I learned that the doctor sent the records to her in mid-July and she thought he had also sent me a copy. In any case, she mailed them to me and I am now sending them to you.").

**MEMORANDUM DECISION AND ORDER - 7**

| | |
|---|---|
| "[Petitioner's] ADHD causes marked difficulty with attention and organization. He has not been able to tolerate stimulant medication because they exacerbate his moods. He has struggled tremendously with academic production as a result of his inattention and other processing disorders." (AR 597). | "[Petitioner] has demonstrated quite significant learning disabilities, which are commonly seen in neurofibromatosis type I. They are particularly troublesome during school, because IQ testing is generally normal, but the learning disabilities prevent learning at the normal rate and using common teaching techniques. This is definitely related to his neurofibromatosis type I. The degree of deficit is evidenced by the inability of the school to adapt their programs to fit his needs." (AR 602). |
| "As a result of [Petitioner's] neurofibromatosis, he has a number of strategically placed intracranial tumors that we believe interfere with his day to day functioning and will continue to inexorably continue to grow and further impair his cognitive and behavior abilities." (AR 597). | "Because [Petitioner] already has some significant NF lesions and NF1 related hamartomas in the central nervous system, he needs perhaps more close observation than the average NF1 case we see." (AR 602). |
| "As I have reviewed the listings of impairments, I believe that [Petitioner] meets the criteria for two disorders: Organic Mental Disorders and ADHD. As a result of his Neurofibromatosis and intracerebral tumors, [Petitioner] has memory impairments, impairment in impulse control, and disturbance of concentration, attention and judgment. He has marked difficulty in maintaining concentration, persistence, and pace. His impairments in math and written language are directly due to his NF-I tumors." (AR 597). | |
| "In looking at the definition of functional equivalence, it is also clear that [Petitioner] has marked impairment in a) acquiring and using information and b) attending and completing tasks. In my opinion, [Petitioner] should be considered disabled." (AR 597). | |

| "It is extremely difficult to pinpoint an exact time or date that his impairment occurred since his neurofibromas have been slowly growing and increasingly causing impairment. This neurological process has been occurring at the same time that developmental expectations have been increasing. We have arrived at a time when [Petitioner's] abilities have failed to keep up with expectations and are now very obvious to this examiner." (AR 597) | |
|---|---|

A review of the ALJ's November 7, 2008 decision reveals that these observations were never even considered when discussing Petitioner's alleged disability, thus providing the basis for Petitioner's latest arguments before this Court. As Petitioner points out, such evidence cannot be altogether ignored in favor of other, conflicting evidence - more must be done to fully vet such potentially significant and probative medical opinions when considering a claimant's disability. *See* Pet.'s Brief, pp. 8-9 (Docket No. 11); *see also* 20 C.F.R. §§ 416.927(b), (c) & (d) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive. . . . . After we review all of the evidence relevant to your claim, including medical opinions, we make findings about what the evidence shows. . . . . Regardless of its source, we will evaluate every medical opinion we receive"); *Vincent*, 739 F.2d at 1394-95 (although Secretary need not discuss all evidence presented to her, "she must explain why 'significant probative evidence has been rejected.'" (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981))); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("We

have made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight and that, if the ALJ chooses to disregard them, 'he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.'" (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)))

Respondent does not dispute that the ALJ did not consider the opinions of either Dr. Leavell or Dr. Wildin. Instead, Respondent's objection to the Petition for Review focuses exclusively on the *timing* of Petitioner's submission of these opinions to the ALJ, arguing that any evidence submitted after the issuance of the ALJ's decision need not be considered except for good cause. *See* Resp't Brief, pp. 4-5 (Docket No. 12) ("Petitioner contends this Court should consider new evidence submitted to the Appeals Council following issuance of the ALJ's decision. . . . . Petitioner's new evidence was presented to the Appeals Council, not the ALJ, is largely non-probative to the period under review by the ALJ, and was submitted untimely with no good cause. . . . . The vast majority of this evidence post-dates the ALJ's decision and, therefore, is not relevant to the period under review."). Respondent's argument, however, is fundamentally flawed - particularly when considering that such evidence was submitted to the AJL *before* he issued his decision.

The record reveals that the Petitioner forwarded Dr. Leavell's and Dr. Wildin's opinions to the ALJ on August 11, 2008[3] - two months after the June 10, 2008 hearing and nearly three months before the decision itself. (AR 595-596; 23-35). Because the ALJ's November 7, 2008

---

[3] Unfortunately, Petitioner's initial briefing consistently (but mistakenly) stated that the records were submitted to the ALJ on August 11, 2009 which, if true, would validate Respondent's arguments. *See* Pet.'s Brief, p. 8 (Docket No. 11). Petitioner's subsequent briefing corrects this oversight. *See* Pet.'s Reply Brief, p. 2, n. 1 (Docket No. 13).

**MEMORANDUM DECISION AND ORDER - 10**

decision did not reference either provider's opinion, Petitioner's January 9, 2009 correspondence to the Appeals Council once again references these apparently-overlooked materials. (AR 594) ("The denial on the claim for [Petitioner] is being appealed as the administrative law judge did not take all the medical evidence submitted into consideration. If he had done so, the claimant should have been found 'disabled'."). Therefore, it cannot be said (as Respondent does here) that the evidence in question post-dated the ALJ's decisions; simply put, it did not. Under these circumstances, while Dr. Leavell's and Dr. Wildin's opinions may not be universally shared by others in the relevant medical community,[4] the ALJ has not identified legitimate reasons for rejecting those opinions.

The Court fully recognizes and accepts the very real possibility that Petitioner's Petition for Review may ultimately be rejected. Even so, any final decision should be made after all relevant information is made available to each medical provider commenting on Petitioner's condition - in this case Dr. Bruce considering Dr. Leavell's and Dr. Wildin's opinions. Whether Dr. Bruce would have actually amended his findings and, thus, impacted the ALJ's decisions, is a conjectural exercise that the Court is neither equipped to perform nor interested in engaging here.

As a result, the action will be remanded in this very limited respect to allow the ALJ the opportunity to reconsider the evidence supporting his findings, keeping in mind that Dr. Bruce's opinions and, likewise the ALJ's reliance on those opinions, are incomplete. However, the Court points out that the ALJ is not bound by Dr. Leavell's formal disability determination ((AR 597) ("In my opinion, [Petitioner] should be considered disabled.")). *See* 20 C.F.R. § 416.927(e)(1)

---

[4] Any reliance on Dr. Bruce's opinions is arguably in question by the fact that Dr. Bruce did not even consider Dr. Leavell's and Dr. Wildin's opinions, thus contributing to the Court's reluctance to dismiss Petitioner's claims at this time.

**MEMORANDUM DECISION AND ORDER - 11**

("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").[5] That is not to say, however, that the ALJ may not be persuaded to the position urged by Petitioner after a review and consideration of the full array of evidence.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. However, disregarding the opinions of Dr. Leavell and Dr. Wildin are not supported by the requisite substantial information in that Dr. Bruce's opinions (which the ALJ relied upon) are incomplete given the timing of Dr. Bruce's testimony, where he was unable to consider and incorporate Dr. Leavell's and/or Dr. Wildin's conclusions into the framework of his own opinion. Therefore, the Court remands this action for further consideration.

## V. ORDER

Based on the foregoing, Petitioner's request for review is hereby GRANTED. The Commissioner's decision to disregard Dr. Leavell's and Dr. Wildin's opinions is reversed and

---

[5] Because Petitioner's alternate arguments concerning Petitioner's credibility and the scope of the administrative record are dependent on the ALJ's consideration of this additional evidence, they will not be discussed here but, rather, are to be addressed by the ALJ, if necessary, on remand.

**MEMORANDUM DECISION AND ORDER - 12**

this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **September 27, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**